# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH GUARRASI and U & ME, INC. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-5475 |
| | : | |
| DIANE E. GIBBONS et al. | : | |
| Defendants. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                     October ____, 2008


    Joseph Guarrasi, a pro se state prisoner and former attorney, and U & Me, Inc.[1] bring this

suit against twenty-nine defendants.[2]  Guarrasi alleges a wide-ranging and generally unbelievable

conspiracy.  Because Guarrasi is proceeding *in forma pauperis* and the majority of his allegations

---

[1] U & Me, Inc. is a Pennsylvania corporation that Guarrasi used to purchase 703 North
Street, Doylestown, Pennsylvania.  U & Me, Inc. is not a proper plaintiff to this case because the
Complaint alleges violations of individual rights arising under civil rights statutes, which do not
apply to corporations.  The court will therefore dismiss U & Me, Inc. from the suit and refer to
Guarrasi as the sole plaintiff in this Memorandum and Order.

[2] The twenty-nine defendants are:  Bucks County District Attorney Diane E. Gibbons;
Bucks County Assistant District Attorney Thomas G. Gambardella; Doylestown Township
Detectives Timothy Carroll, Michael V. Mosiniak, Donald G. Mather, Robert C. Potts, Chris
Mather, John C. Knowles, Terry J. Lachman, and Robert M. Gorman; Doylestown Township
Police Officer Bryon Rose; Montgomery County Corporal Brad Zartman; Guarrasi's defense
attorneys Richard R. Fink, Kathleen E. Martin, Alan Tauber, and Robert J. Levant; private
individuals Michael Samios, Lisa M. Fryling, Thomas Witthauer, Greg King, and Deloris
Alfichi; John Does Chief of Police of Montgomery Country, policymaker of Bucks County, and
Bucks County custodian of plaintiff's personal property; and the following municipalities:  the
County of Bucks, the Township of Doylestown, the Borough of Doylestown, the City of Hatboro,
and the County of Montgomery.

1

are frivolous, the court will dismiss much of the Complaint and most of the defendants pursuant to 28 U.S.C. § 1915(e)(2).[3]  A few of Guarrasi's allegations, however, are not obviously frivolous and, if true, would entitle him to relief.  The court will therefore order the U.S. Marshals Service to serve the specific defendants to which the nonfrivolous claims apply.

Guarrasi brings seven enumerated counts and numerous other claims against each of twenty-nine defendants individually and in his or her official capacity.  Counts I, II, and III allege 42 U.S.C. § 1983 claims for conversion of plaintiff's properties at 703 North Street, Doylestown, Pennsylvania; 32 Circle Drive, Danboro, Pennsylvania; and 1501 Lower State Road, North Wales, Pennsylvania.  Count IV alleges conspiracy in violation of 42 U.S.C. § 1985.  Count V alleges a violation of 42 U.S.C. § 1986 for negligent failure to prevent misfeasance, malfeasance, or nonfeasance of office.  Count VI alleges discrimination, invasion of privacy, defamation, and false light in violation of 42 U.S.C. §§ 1981 and 1982.  Count VII alleges municipal liability for fraud on the court, misuse of process, and false arrest.  Plaintiff's other allegations include that his bail was excessive; that police officers seized items outside the scope of a search warrant and failed to return them; that defendants sold his property for personal benefit; that private

---

[3] Section 1915(e)(2) states:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
>> (i) is frivolous or malicious;
>> (ii) fails to state a claim on which relief may be granted; or
>> (iii) seeks monetary relief against a defendant who is immune from such relief.

individuals stole his property with the permission of public officials; that officials and other defendants made statements to the media and tribunals that harmed his property and reputation, infringed his contracts, and resulted in the wrongful surveillance and warrants; and that the municipalities failed to properly train their officers, detectives, and attorneys.

## I.     Plaintiff's Factual Allegations

According to the Complaint, Guarrasi purchased 32 Circle Drive from Frank and Donna Moldovanyi on December 12, 2003; 1501 Lower State Road from Witthauer on January 16, 2004; and 703 North Street from Fryling on January 28, 2004.  In late February or early March 2004, after Guarrasi hired Samios and Witthauer to remodel the properties, Witthauer moved back into 1501 Lower State Road, and Samios and Fryling reoccupied 703 North Street.  When he discovered their occupancy, Guarrasi instructed them to leave.

Instead of deserting the properties, Samios, Fryling, and Witthauer conspired to reacquire the properties.  They sought help from Alfichi, a police informant, and Detective Carroll.  Carroll in turn enlisted the aid of Detective Mosiniak and ADA Gambardella.  According to the Complaint, Mosiniak and Gambardella agreed not to enforce Guarrasi's right to evict Samios, Fryling, and Witthauer in exchange for their help in implicating Guarrasi in a crime.  Pursuant to this agreement, Samios wore a wire at Carroll's request.  The Bucks County defendants also asked the Montgomery County defendants not to enforce Guarrasi's property rights.  Officials from both counties refused Guarrasi's requests for assistance.[4]

---

[4] On February 22 and 25, 2004, Guarrasi called the Montgomery County and Bucks County police to have Witthauer removed from 1501 Lower State Road.  The police refused to intervene.  And, on February 23, 2004, Guarrasi called the Doylestown Township police to report a burglary and trespass at 703 North Street.  Officer Magee and Corporal O'Connor investigated the incident and noted evidence of a break-in, but did not take further action.

To implicate Guarrasi in a crime, Gambardella, Carroll, Mosiniak, Samios, Fryling, and Witthauer applied under oath for a "consensual intercept wire authorization" against Guarrasi on February 23, 2004.  The application contained allegedly false statements regarding ownership of 703 North Street and that "Guarrasi was going to run a call girl service out of the house."  The intercept request was granted, purportedly because of a county policy to grant all such requests.  Four days later, on February 27, 2004, Carroll, Mosiniak, and others applied for and were granted a second consensual intercept based on false statements regarding ownership of 1501 Lower State Road and that Guarrasi spoke to Samios during conversations recorded under the earlier intercept about engaging in insurance fraud and establishing a prostitution ring.

Then, on March 2, 2004, unspecified defendants filed an affidavit of probable cause for Guarrasi's arrest and for a search of his property.  The affidavit contained a false statement that on February 26, 2004 Guarrasi paid a $2000 down payment for a "hit" on Witthauer.  Police executed the resulting warrant, arrested Guarrasi, and charged him with attempted murder.  While executing the search warrant, they seized items purportedly outside the scope of the warrant.  They have not returned those items, including cash, jewelry, stock certificates, corporate kits, vehicle titles, bank records, contracts, client files, computers and zip disks, photo albums, and keys.

Guarrasi was arraigned in front of the Honorable Robert C. Roth.  At that time, ADA Gambardella allegedly had a twenty minute, ex parte meeting with the judge, after which the judge set bail at ten million dollars.  Gambardella then informed Guarrasi that Gambardella was helping Fryling regain the deed to 703 North Street.

While Guarrasi was in custody, Samios and Fryling caused $20,000 worth of damage to the property at 703 North Street.[5]  They later seized Guarrasi's personal property located at 424 Oakdale Avenue in a shop owned by Bob Hugget.  A Hatboro police report discovered by Guarrasi in 2006 quotes Detective Carroll as authorizing Samios and Fryling to seize this property.

On May 11, 2004, the Honorable David W. Heckler reduced Guarrasi's bail to two million dollars, on the condition that he not contact Samios, Fryling, or Witthauer.  Guarrasi posted bail and immediately filed a complaint with the Doylestown Township police to have Samios and Fryling removed from 703 North Street.  The police refused to execute the complaint.[6]

On July 26, 2004, the day Guarrasi was scheduled to attend a preliminary hearing, nonparty Dr. Robert D. Strochak contacted Guarrasi's wife with instructions that Guarrasi should report to Warminster Hospital for a mental evaluation in lieu of attending the hearing.  Attorney Fink confirmed this instruction.  After Guarrasi reported and was admitted to the hospital, the police arrested Guarrasi there that evening for failing to attend the hearing.  In a later hearing before the Honorable Robert Schnell, Jr., Gambardella testified that Guarrasi was never admitted to the hospital, but was instead hiding there.  Without objection from Fink, Judge Schnell raised Guarrasi's bail to five million dollars because Guarrasi was a threat to the community.  On

---

[5] Guarrasi scheduled an eviction hearing for March 31, 2004, which his defense attorney, Fink, later cancelled.

[6] In the days after Guarrasi posted bail, Samios and Fryling allegedly threatened Guarrasi and his family and, at one point, tried to run them off the road.  Samios also vandalized Guarrasi's parents' property and vehicles.  The police refused to assist Guarrasi.

August 8, 2004, Judge Schnell allegedly entered Guarrasi's prison cell, without counsel present, and made Guarrasi sign papers waiving his right to a preliminary hearing.

Guarrasi was transferred from police custody to Friends Hospital on September 10, 2004, where he was diagnosed with bipolar disorder, mania, and psychosis. He was medicated with Lithium, Klonopin, Respidol, Dilantin, Inostitol, Claritin, and other drugs. At this point, Guarrasi's wife contacted attorney Martin, of the law firm Levant, Martin, Levin & Tauber, to take over his case from Fink. Martin met with Fink and ostensibly joined the plot against Guarrasi. Martin failed to enter an appearance, file a motion, or otherwise attend to Guarrasi's case. On March 28, 2005, Guarrasi pleaded no contest to a charge of attempted murder and guilty to charges of attempted aggravated assault, attempted kidnaping, attempted burglary, and related counts. He was found guilty but mentally ill and was sentenced to six and a half to fifteen years of imprisonment.

According to the Complaint, DA Gibbons, ADA Gambardella, Detective Carroll, Detective Mosiniak, Detective Donald Mather, Detective Potts, Detective Knowles, Detective Chris Mather, Detective Lachman, attorney Fink, attorney Martin, attorney Tauber, attorney Levant, Samios, and Fryling made false statements to various tribunals from February 23, 2004 to July 6, 2006. Multiple defendants, including Gibbons, Gambardella, and Fink, also made allegedly false statements to the media regarding Guarrasi's acquisition and ownership of the various properties. At some point in 2004, an unspecified defendant publicly claimed that Guarrasi was a mafia "don," ostensibly "with connections in organized crime with running prostitutes and brothels." (Compl. ¶ 176(F); *see also id.* ¶¶ 198-200.)

After numerous attempts to gain access to his defense file, Guarrasi was first allowed to review his complete file September 21, 2006, at which point he discovered the extent of the conspiracy against him.  At that time, he learned of attorneys Fink's and Martin's complicity in the plot, which was purportedly confirmed in writing by Fink.  He also learned that the police investigators involved in the alleged conspiracy knew of his property rights but refused to enforce them, that Detective Carroll authorized Fryling and Samios to take his property from 424 Oakdale Avenue, and that ADA Gambardella had the deed to 703 North Street transferred to Fryling with Fink's aid.

According to the Complaint, the alleged conspiracy is ongoing.  Defendants refused to execute a "properly drafted private criminal complaint" on August 22, 2007; made false statements to the media in July and September 2007; and refused to "return property or answer motions, sealing of court records, false statements to Tribunal et al." in October 2007.  (Compl. ¶ 154.)  Overall, Guarrasi alleges extensive losses to his property, business, and personal interests and from various legal actions that were previously pending but that he was forced to settle or withdraw because of the criminal charges.

## II.    Discussion

The court employs a two-step process to evaluate motions to proceed *in forma pauperis* under § 1915.  *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990).  First, the court evaluates the litigant's financial status to determine whether he is eligible to proceed *in forma pauperis* under § 1915(a).  *Roman*, 904 F.2d at 194 n.1.  Second, the court assesses the complaint under § 1915(e)(2) to determine whether to dismiss it *sua sponte* because it is frivolous or malicious,

7

fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Roman*, 904 F.2d at 194 n.1.[7]

The frivolousness prong of § 1915(e)(2)(B)(i) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."[8] *Neitzke*, 490 U.S. at 327. The failure to state a claim on which the court may grant relief and the defendant's immunity prongs of § 1915(e)(2)(B)(ii) and (iii), respectively, require courts to apply the same standard as applied when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "accept[ing] as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). To avoid dismissal, the "[f]actual allegations must

---

[7] These two steps emerge from Congress's dual considerations in enacting § 1915. By allowing *in forma pauperis* suits, Congress intended to ensure that indigent citizens could gain access to the federal courts. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). At the same time, however, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* Congress amended § 1915 in 1996 to expand the grounds on which the court must dismiss the case *sua sponte*. A significant portion of Supreme Court and Third Circuit case law on *sua sponte* dismissals under § 1915, however, addresses the pre-1996 version of the statute, which allowed *sua sponte* dismissal only on ground of frivolousness. That precedent remains applicable as frivolousness is still a proper ground on which to dismiss an *in forma pauperis* complaint.

[8] Section 1915(e)'s "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion," but also the "clearly baseless" factual allegations. *Neitzke*, 490 U.S. at 325. Factual allegations are "clearly baseless" when they "describ[e] fantastic or delusional scenarios," *id.* at 328, are "fanciful," *id.* at 325, or "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). In *Denton*, the Supreme Court declined "the invitation to reduce the 'clearly baseless' inquiry to a monolithic standard," because it was "confident that the district courts, who are 'all too familiar' with factually frivolous claims, are in the best position to determine which cases fall into this category." 504 U.S. at 33 (internal citation omitted).

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Generally, the court grants the plaintiff leave to amend the complaint unless doing so would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-14 (3d Cir. 2002).

A.    **Eligibility to Proceed *In Forma Pauperis* Under § 1915(a)**

By an order dated March 18, 2008, the court granted Guarrasi's motion to proceed in with this action *in forma pauperis* and scheduled periodic deductions from his prisoner account.

B.    **Dismissal of Claims Under § 1915(e)**

As to dismissal under § 1915(e), the court concludes that prosecutorial and defense attorney immunities apply to many of the claims, that many of the claims are barred by the statute of limitations, and that many of the claims are frivolous.  After applying these overlapping bases for dismissal, only three of plaintiff's claims survive the court's § 1915(e)(2) review.  In Count I, plaintiff has sufficiently alleged a § 1983 claim against ADA Gambardella and attorney Fink for the transfer of the deed to 703 North Street.  He has also alleged a § 1983 claim against Samios, Fryling, and Detective Carroll for deprivation of his personal property located at 424 Oakdale Avenue.  His final claim is against John Doe, Bucks County custodian of plaintiff's personal property, for failure to return personal property seized during the execution of the search warrant. The court will dismiss the remainder of claims and defendants with prejudice because allowing amendment would be futile and inequitable to these defendants.

### 1.     Immunities and Limitations

#### a.     Prosecutorial Immunity

The Complaint alleges numerous § 1983 claims against DA Gibbons and ADA Gambardella.  In order to bring a suit under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional or statutory right.  *West v. Atkins*, 487 U.S. 42 (1988); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  A prosecutor is absolutely immune from liability for monetary damages under § 1983 for actions "within the scope of his [or her] duties in initiating and pursuing a criminal prosecution."  *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).  However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991)).  Thus, the court employs a "function test" to determine if the prosecutor is entitled to absolute immunity; absolute immunity is conferred only where the prosecutor is functioning as the state's advocate.  *Yarris v. County of Del.*, 465 F.3d 129, 136 (3d Cir. 2006).

In this case, Guarrasi alleges that DA Gibbons and ADA Gambardella violated his rights.  To the extent their actions involved prosecuting his case in their capacities as the government's advocates, such as their statements to the various courts, they are entitled to absolute immunity.  However, a number of Guarrasi's claims arise from functions outside of the advocate's role.  As to Gambardella, Guarrasi alleges that Gambardella improperly authorized or sought authorization

10

for the consensual intercept (Compl. ¶ 141); illegally converted Guarrasi's property by requesting transfer of the deed to 703 North Street back to Fryling (*id.* ¶ 175(B)); and made false and defamatory statements to the media (*id.* ¶ 177).  As to Gibbons, Guarrasi alleges that Gibbons improperly authorized or sought authorization for the consensual intercept (*id.* ¶ 141) and made false and defamatory statements to the media (*id.* ¶ 177).  These actions are investigatory and administrative, not prosecutorial, and thus not entitled to absolute immunity.

### b.    Defense Attorney Immunity

The Complaint alleges a number of § 1983 claims against Guarrasi's defense attorneys. Defense attorneys do not "act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also Black v. Bayer*, 672 F.2d 309 (3d Cir. 1982), *abrogated in part on other grounds as recognized by D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364 (3d Cir. 1992).  Guarrasi alleges only one action by any of his defense attorneys potentially arising under the color of state law: outside of his duties as Guarrasi's defense attorney, Fink allegedly acted under Gambardella's direction when transferring the deed to 703 North Street to Fryling without due process of law.  The remainder of Guarrasi's claims against Fink will be dismissed.  Likewise, the Complaint's allegations against other defense attorneys are based on activities associated with Guarrasi's criminal defense, entitling them to immunity.  The court will therefore dismiss the case against defense attorneys Martin, Tauber, and Levant with prejudice and will dismiss those individuals as parties to the lawsuit.

c.    **Statute of Limitations**

Federal civil rights claims under §§ 1981, 1982, 1983, and 1985 are subject to the state statute of limitations for personal injury actions.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (applying the state statute of limitations for § 1981 claims not arising out of an act of Congress enacted after December 1, 1990); *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (instructing courts to select a single state statute of limitations period for civil rights claims), *superceded by* 28 U.S.C. § 1658 (codifying a four-year limitations period for claims brought pursuant to statutes enacted after December 1, 1990); *Burnett v. Grattan*, 468 U.S. 42, 49 (1984) (holding that "[i]t is now settled that federal courts will turn to state law for statutes of limitations in actions brought under these civil rights statutes").  In Pennsylvania, this statute of limitations period is two years.  42 Pa. Cons. Stat. § 5524.  The limitations period begins to run when the claimant "knew or had reason to know of the injury that constitutes the basis of th[e] action."  *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982).  Section 1986 claims, however, are subject to a shorter one-year limitations period.  *See* § 1983 (establishing that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").

Guarrasi filed the Complaint on November 28, 2007.  Thus, timely claims under §§ 1981, 1982, 1983, and 1985 are those that he came to know for the first time after November 28, 2005, without having reason to know of them earlier; for § 1986 claims, the applicable date is November 28, 2006.  The majority of events giving rise to Guarrasi's claims took place in 2004; therefore, absent tolling or proof that he did not have reason to know of these claims, they are time barred.  Guarrasi claims that "[o]n September 21, 2006, after many requests failed, Mr.

12

Guarrasi finally views his complete file from Defendant Fink and Defendant Tauber, for the first time. . . .  Only after review of the file, the full transcription of the tapes, the emails and letters, did Mr. Guarrasi first come to know the full unconstitutional nature of his injury, the state actor Defendants who were responsible and how it was accomplished." (Compl. ¶¶ 151-153.) Guarrasi provides no detail about what new information he came to know on September 21, 2006.  In a generous reading of the Complaint, the only evidence plausibly revealed for the first time by the discovery of the information in his defense counsels' files were (1) e-mails documenting ADA Gambardella's and attorney Fink's transfer of the deed for 703 North Street to Fryling, and (2) the Hatboro police report documenting Detective Carroll's authorization of Fryling's and Samios's confiscation of Guarrasi's property at 424 Oakdale Avenue.  Likewise, Guarrasi alleges only one claim that may support tolling of the statute of limitations:  his claim against John Doe, Bucks County custodian of plaintiff's personal property, that the government has failed to return property seized during the search of his home.  Guarrasi has alleged multiple attempts to restore his property using state law mechanisms from March 2004 to present.  (*See* Compl. ¶ 143.)  These attempts render premature a dismissal of this claim *sua sponte* on the basis of a statute of limitations violation.  The remainder of his §§ 1981, 1982, 1983, 1985, and 1986 claims are time barred.

Overall, only three claims are not time barred, all arising under § 1983—the transfer of the deed to 703 North Street, the confiscation of his property at 424 Oakdale Avenue, and the failure to return his seized property.  As discussed next, for the purposes of § 1915(e)(2) and without having heard form defendants, these three claims are also nonfrivolous and state a claim

13

on which the court may grant relief.  The rest of his §§ 1981, 1982, 1983, 1985, and 1986 claims will be dismissed.

### 2.    Frivolousness

The court will also dismiss most of Guarrasi's claims for frivolousness.

### a.    Counts I, II, and III:  Conversion under 42 U.S.C. § 1983.

Counts I, II, and III of Guarrasi's Complaint allege that under the color of state law defendants took possession of his properties at 703 North Street, 1501 Lower South Road, and 32 Circle Drive; transferred the deed to 703 North Street without authorization; and removed or otherwise possessed his personal property at each location.  (*Id.* ¶¶ 182-189.)  These claims are ostensibly brought under § 1983.

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  The second step in the analysis is to determine that the actor acted under the color of state law.  *See Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (holding that "the deprivation must be caused by the exercise of some right or privilege created by the [s]tate . . ., and the party charged with the deprivation must be a person who may fairly be said to be a state actor" (internal quotation marks and citations omitted)).  "The traditional definition of action under color of state law . . . requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* (internal quotation marks and citations omitted).

14

Guarrasi alleges that Samios and Fryling occupied the property at 703 North Street and that Witthauer occupied the property at 1501 Lower State Road.[9]  Guarrasi's conversion claims under § 1983 thus raise the Fourteenth Amendment's protection from deprivation of property interests without substantive and procedural due process.  *See, e.g.*, *Abbott*, 164 F.3d at 146 (holding that "[i]t is . . . well established that possessory interests in property invoke procedural due process protections"); *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995) (concluding that "ownership is a property interest worthy of substantive due process protection.")*, overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 401 (3d Cir. 2003)).

While Guarrasi alleges violations of property rights, with a single exception discussed below, he fails to allege action under the color of state law.  Guarrasi accuses Samios, Fryling, and Witthauer of conspiracy with ADA Gambardella, Detective Carroll, and Detective Mosiniak, as well as other unnamed state officials, to deny Guarrasi his property rights in exchange for their cooperation in implicating Guarrasi in a crime; thus, cloaking the private actors who occupied his properties with the authority of state law.  (*See* Compl. ¶ 92; *see also, e.g.*, *id.* ¶¶ 88-93, 172(A).) These conspiracy allegations are conclusory, hollow, and mere suspicion.  As such, the court concludes that Fryling, Samios, and Witthauer were not acting under the color of state law when they allegedly occupied Guarrasi's properties.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (concluding that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private

---

[9] The Complaint's only relevant mention of 32 Circle Drive states that when Guarrasi purchased 703 North Street, Fryling and Samios moved out of 703 North Street and into 32 Circle Drive, apparently with Guarrasi's permission.  (Compl. ¶ 105(A)(1)(b).)

entity"); *see also Abbott*, 164 F.3d at 147 (holding that "[t]he mere presence of police at the scene of a private repossession does not, alone, constitute state action causing a deprivation of a protected property interest").  Thus, the court will dismiss as frivolous and with prejudice Counts II and III in their entirety and Count I to the extent that it alleges a § 1983 claim based on the actions of Samios, Fryling, or Witthauer acting in conspiracy with state actors.

The remainder of Count I alleges that ADA Gambardella, acting under the color of state law but outside of his prosecutorial capacity, had attorney Fink transfer Guarrasi's deed to 703 North Street to Fryling in violation of Guarrasi's due process rights.  (*See* Compl. ¶ 175(A)(2), (B) (1)-(3).)  This allegation is nonfrivolous as it states a cause of action based on facts that plaintiff could plausibly prove at trial.  As discussed above, neither prosecutorial immunity nor expiration of the statute of limitations plainly bars this claim.  Thus, Count I survives only to the extent that it alleges ADA Gambardella acted under the color of state law when he instructed attorney Fink to transfer the deed and thus deprive Guarrasi of his property rights in 703 North Street.

### b.    Other § 1983 Claims for Deprivation of Property.

Guarrasi's recitation of facts gives rise to a few additional claims that are properly interpreted as § 1983 claims alleging deprivation of property.  To start, he alleges that Detective Carroll told or authorized Samios and Fryling to seize Guarrasi's property from a shop owned by Bob Hugget, located at 424 Oakdale Ave.  (*See* Compl. ¶ 172.)  These allegations sufficiently allege that the confiscation occurred under the color of state law, thus allowing a claim under § 1983.  As noted above, the court cannot for purposes of the present motion conclude that this claim is barred by the statute of limitations because Guarrasi plausibly discovered Detective

Carroll's authorization of Samios and Fryling's actions during his review of his defense attorney's files in 2006.

Next, Guarrasi alleges that unnamed police officers seized property outside of the scope of the search warrant and that the municipalities failed to return this property.[10]  Regarding only the failure to return the property, Guarrasi has alleged both specific items seized in the search, a proper but unnamed defendant, John Doe, Bucks County custodian of plaintiff's personal property, as well as his attempts to restore his property from March 2004 to present.  (*See* Compl. ¶ 143.)  Thus, Guarrasi has stated a cause of action under § 1983 for violation of his due process rights.  In all, plaintiff may pursue under § 1983 the same three claims that are not time-barred.

### c.   Counts IV and V:  Conspiracy in violation of 42 U.S.C. § 1985 and negligence to prevent misfeasance, malfeasance, and nonfeasance of office in violation of 42 U.S.C. § 1986.

Count IV alleges a conspiracy in violation of § 1985.  In addition to violating the statute of limitations, this claim is frivolous.  Subsection (3) of § 1985 is the only applicable portion of the statute.[11]  Section 1985(3) permits a plaintiff to bring an action if injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  It

---

[10] The court will not consider any challenge to the scope of the warrant because any grant of relief would impermissibly imply the invalidity of a valid state court criminal conviction.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

[11] Sections 1985(1)-(2) are inapplicable.  Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties.  Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witness who have testified, or attempting to influence or injure grand or petit jurors.  Guarrasi does not allege any conduct covered by these provisions.

does not provide a "substantive right itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court clarified what a plaintiff must allege to state a claim under § 1985(3):  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin*, 403 U.S. at 102-03).

Guarrasi's complaint fails to allege a claim under § 1985(3) because it fails to allege conspiracy with requisite facts, fails to allege invidious discrimination, and with a single exception, fails to allege the violation of a protected right.  Allegations of conspiracy must include facts based on more than mere suspicion and speculation to avoid dismissal under § 1915(e) for frivolousness.  *See Young v. Kann*, 926 F.2d 1396, 1406 n.16 (3d Cir. 1991); *see also Parrott v. Abramsen*, 200 F. App'x 163, 165-7 (3d Cir. 2006).  Guarrasi's conspiracy allegations are based on suspicion and speculation, including the claims that private citizens who wanted Guarrasi's property enlisted governmental officials, who then enlisted officials in other municipalities and, somehow, multiple independent defense attorneys to deprive him of his rights.  These alleged conspirators then continued beyond the original scope of the alleged conspiracy to deprive him of all types of rights without any apparent reason.  These claims lack any factual grounding as to who agreed to what, when, how, and with what words and actions. They are thus frivolous.

18

A plaintiff must also allege that the defendants have acted and conspired with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (internal quotation marks and citation omitted); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (holding that "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious"). Guarrasi only vaguely alludes to animus based on his Italian-Sicilian American heritage because an unnamed defendant at some point labeled him a mafia don.  He fails to allege facts that support a conclusion that any defendant acted to deprive him of any right based on that alleged animus.  In fact, he identifies the motivation for the conspiracy as the private actors' desire to regain their property.  The allegations are thus insufficient to sustain a cause of action.  *See Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) (concluding that "[a] conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals" (internal quotation marks and citations omitted)).

Finally, a plaintiff must allege that the defendants have acted with the specific purpose of depriving the plaintiff of "a right guaranteed against private interference."  *Bray*, 506 U.S. at 274. Rights guaranteed against private enforcement include interstate travel, *Griffin*, 403 U.S. at 105-06; the right to vote, *United States v. Classic*, 313 U.S. 299, 314-315 (1941); and the right to petition the government for a redress of grievances, among others.  Guarrasi alleges that the defendants conspired to deny him the equal protection of the laws by violating his constitutional rights to make and enforce contracts; to petition the government for redress; to not be deprived of life, liberty, or property without due process and just compensation; to privacy; to be secure

19

against unreasonable searches and seizures; to have no excessive bail; and to purchase and convey real and personal property.  (*See* Compl. ¶¶ 191-92.)  With the exception of the right to petition the government for a redress of grievances, these alleged acts do not give rise to cognizable claims under § 1985(3) because they are not protected from private interference.  The allegations regarding the right to petition the government are moreover frivolous in that they stem from his claim that the police failed to execute his private criminal complaint (*see id.* ¶ 170(C)); yet, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  The court will thus dismiss Count IV with prejudice for frivolousness because, in addition to violating the statute of limitations, Guarrasi fails to meet any of the required prongs of a claim under § 1985(3).[12]

In Count V, Guarrasi alleges a violation of § 1986, a companion statute to § 1985(3).  This claim is time barred, and because Guarrasi's § 1985 claim fails, so too does his § 1986 claim.  *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) (concluding that "[b]ecause transgressions of [section] 1986 by definition depend on a preexisting violation of [section] 1985, if the claimant does not set forth a cause of action under the latter[;] its claim under the former necessarily must fail also").  The court will thus dismiss Count V with prejudice.[13]

---

[12] To the extent that Guarrasi alleges a conspiracy to bring false or malicious criminal charges on account of his class, the allegation impermissibly asks the court to question the validity of his conviction.  *See Heck*, 512 U.S. at 486-87.

[13] Assuming that Guarrasi also intended to allege a conspiracy undertaken under the color of state law in violation of § 1983, his claims still fail.  A "civil conspiracy is a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying

d.      **Count VI:  Claims under 42 U.S.C. §§ 1981 and 1982 for**
**Invasion of Privacy, Deformation [sic] and False Light.**

Count VI alleges invidious discrimination in violation of §§ 1981 and 1982.  In addition to being barred by the two-year statute of limitations, these claims are also frivolous.  To state a claim under §§ 1981 and 1982, a plaintiff must allege that the defendant acted in violation of the plaintiff's rights based on race, ethnicity, or ancestry.  *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  In this case, Guarrasi claims that in 2004 unspecified defendants publicly claimed that "he is a mafia 'don' with connections in organized crime with running prostitutes and brothels . . . based solely on the Plaintiffs [sic] Sicilian Italian American heritage."  (Compl. ¶ 176(F); *see also id.* ¶¶ 198-200.)  Even assuming that labeling somebody a "mafia don" equated to prejudice against Guarrasi based on his Sicilian Italian American heritage, the Complaint, as noted above, fails to allege facts regarding who made the comments and when and in what context.  The Complaint also fails to allege any facts supporting his claims of interference with his contracts or property based on that alleged prejudice; thus, Guarrasi fails to allege any violation of §§ 1981 or 1982.  Because the court concludes that amendment would be futile, it will dismiss Count VI with prejudice for frivolousness.

---

constitutional rights."  *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (internal quotation marks and citations omitted).  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  *Ciambriello*, 292 F.3d at 324-25 (internal quotation marks and citation omitted).  As discussed above, the alleged agreements between the purported conspirators lack a factual basis, and the specific instances of conduct are too tenuous to support a cause of action under § 1983.

   **e.**  **Count VII:  Municipal Liability.**

  Guarrasi asserts a claim of municipal liability in Count VII.  Municipal liability is not a claim; it must be based on a violation of some right found elsewhere in the Constitution or federal law.  Moreover, the court cannot impose municipal liability absent fact allegations supporting the conclusion that unconstitutional actions were taken pursuant to a municipality's policies, ordinances, regulations, practices, decisions officially adopted and promulgated by the municipality's decision makers, or customs.  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Guarrasi alleges that unspecified defendants (interpreted here to mean DA Gibbons, ADA Gambardella, Detective Carroll, and Detective Mosiniak) "had actual knowledge that all statements of said informants to be actually false and without merit yet they swore to the truth of these knowingly false statements to the Tribunal."  (Compl. ¶¶ 203-04.)  He alleges that other defendants (here, the municipalities and their decision makers) "made an edict or policy not to enforce Plaintiffs [sic] Constitutional rights against said informants" and made "edicts, customs or policies . . . to make knowingly false statements of material fact to the Tribunal, the media, and to selectively enforce or not enforce the law."  (*Id.* ¶¶ 206-07.)  These vague allegations of purported personal injustices do not constitute a municipality's policies, ordinances, regulations, practices, decisions officially adopted and promulgated by the municipality's decision makers, or customs.  As such, and because municipal liability is not an independent claim, the court will dismiss Count VII with prejudice as frivolous.

### f.      Other Claims Alleged in the Complaint.

The Complaint contains additional claims, all of which are frivolous, barred by

immunities or by the statute of limitations, or fail to state a claim on which the court may grant

relief.[14]


## III.      Conclusion

The court will dismiss Guarrasi's Complaint with respect to Counts II, III, IV, V, VI and

VII, and all other claims not specifically allowed to proceed by this Memorandum and Order.

Guarrasi has sufficiently alleged § 1983 claims against ADA Gambardella and attorney Fink for

the transfer of the deed to 703 North Street under Count I; against Samios, Fryling, and Detective

Carroll for deprivation of his personal property located at 424 Oakdale Avenue; and against John

Doe, Bucks County custodian of plaintiff's personal property, for failure to return personal

property seized during the execution of the search warrant.  While these claims may too lack

---

[14] For example, Guarrasi mentions 42 U.S.C. § 1987 in the heading of his Complaint. Section 1987 requires federal officials to institute actions against individuals who violate 42 U.S.C. § 1990.  This claim is frivolous, as no facts or legal theories in the Complaint implicate federal officials or § 1990.

Likewise, Guarrasi's excessive bail claim is frivolous because it must be brought as a habeas proceeding challenging the legality of his detention, can only be brought after the exhaustion of state remedies, and is moot as he has waited until after his final conviction in state court to raise the issue.

Guarrasi's allegations that DA Gibbons, ADA Gambardella, and attorney Fink made false statements to the media and tribunals in 2004 are time barred.  Moreover, they fail to allege a harm to his reputation plus a concomitant infringement of a protected right or interest resulting from a substantially and materially false publication.  *See Ersek v. Twp. of Springfield*, 102 F.3d 79, 83 n.5, 84 (3d Cir. 1996).  Moreover, the minor alleged falsities are immaterial to any reputational stigma that arose from the publicity surrounding his arrest for and conviction of attempted murder.  *See id.* at 84 (holding that minor falsehoods, the correction of which would not cure the major reputational damage caused by the truth, are not actionable).

merit, the court will not dismiss them *sua sponte* under § 1915(e).  The court will order these defendants to be identified as necessary and served with notice of these claims.  The remainder of defendants will be dismissed as parties to the lawsuit, as will U & Me, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH GUARRASI and U & ME, INC. | : | |
| Plaintiffs, | : | CIVIL ACTION |
|  | : | |
| v. | : | NO. 07-5475 |
|  | : | |
| DIANE E. GIBBONS et al. | : | |
| Defendants. | : | |
|  | : | |

## Order

YOHN, J.

**AND NOW** on this _____ day of October, 2008, upon consideration of Joseph Guarrasi and U & Me, Inc.'s Complaint, Praecipe to Reinstate Complaint and Issue Summons, and Motion to Order U.S. Marshal to Effectuate Original Service (Doc. Nos. 1, 11, & 12), **IT IS HEREBY ORDERED** that:

1. Counts II, III, IV, V, VI, and VII of the Complaint are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

2. Count I is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2), except as to Joseph Guarrasi's 42 U.S.C. § 1983 claim against Thomas G. Gambardella and Richard R. Fink for the transfer of the deed to 703 North Street, Doylestown, Pennsylvania.

3.      The remainder of the Complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2), except as to Joseph Guarrasi's 42 U.S.C. § 1983 claims against Michael Samios, Lisa M. Fryling, and Timothy Carroll for deprivation of plaintiff's personal property located at 424 Oakdale Avenue and against John Doe, Bucks County custodian of plaintiff's personal property, for failure to return personal property seized during the execution of the search warrant.

4.      U & Me, Inc. is **DISMISSED** as a party to the case.

5.      Diane E. Gibbons, Michael V. Mosiniak, Donald G. Mather, Robert C. Potts, Chris Mather, John C. Knowles, Terry J. Lachman, Robert M. Gorman, Bryon Rose, Brad Zartman, Thomas Witthauer, Greg King, Deloris Alfichi, the County of Bucks, the Township of Doylestown, the Borough of Doylestown, the City of Hatboro, the County of Montgomery; John Doe (Chief of Police of Montgomery Country), John Doe (policymaker of Bucks County), Kathleen E. Martin, Alan Tauber, and Robert J. Levant are **DISMISSED** as parties to the case.

6.      Plaintiff's Motion to Order U.S. Marshal to Effectuate Original Service, Order, and form USM-285 is **GRANTED** as to defendants Thomas G. Gambardella, Richard R. Fink, Michael Samios, Lisa M. Fryling, Timothy Carroll, and John Doe, the Bucks County custodian of plaintiff's personal property, when he or she is identified.  The U.S. Marshal Service is **ORDERED** to serve those defendants as required by Federal Rule of Civil Procedure 4.

7.      Plaintiff's Praecipe to Reinstate Complaint and Issue Summons is **DISMISSED**

as moot.


                                    s/William H. Yohn Jr.
                                    William H. Yohn Jr., Judge

27