# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH GUARRASI and U & ME, INC., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-05475 |
| | : | |
| DIANE E. GIBBONS *et al.*, | : | |
| Defendants. | : | |

## Memorandum

YOHN, J.                                                                                                         August 27, 2009

Plaintiffs, Joseph Guarrasi and U & Me, Inc., sued twenty-nine defendants for various civil rights violations in connection with plaintiff Guarrasi's arrest for attempted murder and other charges, to which Guarrasi pled no contest or pled guilty.  Presently before the court is a motion to dismiss, or in the alternative a motion for summary judgment, from defendants Thomas G. Gambardella and Timothy Carroll.  For the reasons below, the court will deny the motion for summary judgment from Gambardella and grant the motion for summary judgment from Carroll.

**I.    Facts and Procedural History**[1]

---

[1] Pursuant to the court's scheduling order, any motion for summary judgment must include "a separate, short and concise statement, in numbered paragraphs, of the material facts to which the party contends there is no genuine issue to be tried." Scheduling Order, *Guarrasi v. Gibbons*, Civ. Action No. 07cv5475, ¶ 7, at 2 (E.D. Pa. Feb. 19, 2009).  In response to a motion for summary judgment, the "opposing party shall file a separate, short and concise statement, responding to the numbered paragraphs in the moving party's statement, of the material facts as to which the opposing party contends . . . a genuine issue [exists]." *Id.*  Neither party complied with these aspects of the scheduling order as they pertain to the present motion.  Consequently, the court derives certain background facts from its summary of the complaint in the memorandum accompanying its order as to defendants' previous motion to dismiss.  *See*

Because the court writes for the parties only, it will recite only the most relevant facts. Guarrasi's claims arise out of an alleged conspiracy to violate his civil rights that occurred as part of the criminal investigation and judicial proceedings pertaining to his treatment of former owners of homes Guarrasi purchased, namely Thomas Witthauer and Lisa Fryling. *Guarrasi*, 2008 WL 4601903, at *1. Shortly after these purchases, Guarrasi attempted to remove Fryling and Witthauer from their respective previously owned homes. *Id.* at *1. Defendants Fryling and Michael Samios, Fryling's boyfriend, who lived with Fryling at her home at 703 North Street, suspected that Fryling's transfer of that property to Guarrasi was fraudulent and they went to the authorities. *Id.* at **1-2. Through Samios's cooperation, police gathered information about Guarrasi's attempts to remove Witthauer, including recordings of Guarrasi's conversations where he threatened violence against Witthauer. *Id.* at *2. This information led to Guarrasi's arrest and indictment. *Id.* On March 28, 2005, Guarrasi pleaded no contest to a charge of attempted murder and guilty to charges of attempted aggravated assault, attempted kidnaping, attempted burglary, and related counts. *Id.* at *3. He was found guilty but mentally ill and was sentenced to six and a half to fifteen years of imprisonment. *Id.* Guarrasi's present claims against Gambardella and Carroll pertain to deprivations of property arising out of the transfer of Guarrasi's real property back to Fryling and Fryling's taking of Guarrasi's personal property.

    A.    **Transfer of Guarrasi's Real Property**[2]

---

*Guarrasi v. Gibbons*, Civ. Action No. 07-5475, 2008 WL 4601903, at **1-3 (E.D. Pa. Oct. 15, 2008).

  [2] The facts stated hereafter are taken from the very limited documents submitted by the parties with the motion and response. None are contested by the other side. No deposition testimony, answers to interrogatories, or admissions were submitted by either side.

At some unspecified time, due to financial troubles defendants Samios and Fryling faced foreclosure on the home in which they lived at 703 North Street in Doylestown, Bucks County, Pennsylvania. On January 7, 2004, Guarrasi purchased the property from Fryling, (Civil Rights Compl., Exs.- Agreement of Sale for 703 N. St.), and filed the deed for the transfer on January 28, 2004, (Pl.'s Answer to Defs. [sic] Mot. to Dismiss Compl. 'or in Alternative Mot. for Summ. J.' ("Pl.'s Resp.") Ex. 2 - Fee Simple General Warranty Deed). Despite the transfer, Fryling and Samios apparently did not vacate the home. On February 24, 2004, Guarrasi asked Doylestown police to check on the home for suspected squatters. (Pl.'s Resp., Ex. 2 - Police Report 1-2.) The police agreed to check on the home, but also asked for proof of ownership, and Guarrasi faxed the police a copy of the deed. (*Id.*) On March 2, 2004, a local paper reported that Fryling and Samios returned to occupying 703 North Street. (Pl.'s Resp., Ex. 3 - Newspaper Article.) Sometime later, Guarrasi filed an action for eviction against Fryling, but withdrew it on March 30, 2004 so that the parties involved could "discuss resolution of this dispute." (Pl.'s Resp., Ex. 3 - Letter from Richard Fink to District Justice Philip J. Daly.)

The chief deputy district attorney for Bucks County, defendant Gambardella, became involved in this dispute over 703 North Street in the course of the criminal investigation of Guarrasi. On July 18, 2004, Gambardella emailed Guarrasi's attorney and stated that "our CI [Samios] . . . is living in the house that Guarrasi 'purchased' fom [sic] him by exchanging property tat [sic] Guarrasi never owned," while keeping the mortgage in the "CI"'s name.[3] (Pl.'s

---

[3] Neither party, nor any one involved in this correspondence, identify to whom "CI" refers. Nevertheless, the court presumes CI refers to Samios based on these facts: Samios worked as a confidential informant or a consensual interceptor in the criminal investigation of Guarrasi; the email using the term CI referred to "the CI and his girlfriend"; related emails refer to the house where Lisa Fryling was living; and Lisa Fryling was living with her boyfriend,

Resp., Ex. 1 - Emails from Gambardella.)  Gambardella continued, "We have not arrested Guarrasi for this scheme (YET!), however if he is ultimately going to take responsibility for ripping these people off, then I would request that you/he consider deeing [sic] the property back to the rightful owner(s)."  Gambardella claimed that he was not "getting into the civil aspects of this case," but he expressed his feeling that Guarrasi's attorney had a chance to cure an inequity to the benefit of all those involved.  (*Id.*)  On August 17, 2004, Gambardella emailed Guarrasi's attorney to notify him that due to Guarrasi's conduct, foreclosure was pending on the house where Lisa Fryling was living.  (*Id.*)  Gambarella asked for someone to "work on this ASAP (just deed the house back!)" and noted that "these people are getting screwed."  (*Id.*)  On September 16, 2004, in another email to Guarrasi's attorney, Gambarella asked that "if your client Guarassi intends to sign back the house to Lisa Fryling, can he please do so sooner rather than later."  (*Id.*)  He further stated that "although I think Joe [Guarrasi] can be arrested for these matters too – I don't know if that will lead to these people rightfully getting their house back in their names immediately."  (*Id.*)

On October 6, 2004, Lisa Fryling filed an action against Guarrasi and U & Me, Inc. to quiet title for the property located at 703 North Street.  (Pl.'s Resp., Ex. 5 - Stipulation and Settlement Agreement.)  On November 5, 2004, as part of a settlement agreement for pending lawsuits between Guarrasi and Fryling, Fryling agreed to pay Guarrasi $25,000 in exchange for Guarrasi's agreement to an order striking the deed to 703 North Street that "transfer[ed] it from Fryling to U & Me, Inc." and quieting title to the property in Fryling's name.  (*Id.*)

     **B.**    **Seizure of Guarrasi's Personal Property**

---

Samios.

On April 24, 2004, Fryling called the police department of Hatboro Borough, Montgomery County, and claimed that Guarrasi removed her personal property from her house, which Guarrasi had forced her to vacate. (Pl.'s Resp., Ex. 7 - Compl. Summ. Hatboro Police Dep't). Fryling told the police that she had information that led her to believe that her personal property was located at 424 Oakdale Avenue, Hatboro Borough, Montgomery County, Pennsylvania. (*Id.*) Fryling also stated that the owner of the property 424 Oakdale Avenue refused to cooperate with her in recovering her property. (*Id.*) The responding Hatboro police officer contacted defendant Carroll, a Bucks County detective investigating Guarrasi at the time, to discuss the matter. (*Id.*) Carroll confirmed that he had investigated the matter, but that the Doylestown police had not taken a report concerning Fryling's missing items. (*Id.*) The Hatboro police officer told Carroll he would investigate the matter further. (*Id.*)

After securing the cooperation of the property owner at 424 Oakdale Avenue, the Hatboro police officer brought Fryling there. (*Id.*) Fryling found and took a mountain bike and a motorized scooter, which she claimed belonged to her. (*Id.*) The Hatboro police officer advised Fryling to contact the Doylestown police to file a report concerning the missing items recovered. (*Id.*) On February 18, 2009, Carroll gave a signed declaration that the Hatboro police report of the above incident accurately summarized his conversation with the responding officer. (Mem. of Law Supp. Defs. Thomas G. Gambardella and Timothy Carroll's Mot. to Dismiss Compl. Pursuant to Fed. R. of Civ. P. 12(b)(6) or in Alternative Mot. Summ. J. ("Defs.' Mot."), Ex. B - Decl. of Tim Carroll in Supp. of Mot. to Dismiss Compl. Pursuant to Fed. R. of Civ. P. 12(b)(6) or in Alternative Mot. Summ. J. 1-2.) He also stated that he "never authorized anyone to remove any property located at 424 Oakdale Avenue." (*Id.*)

### C. Procedural History

Plaintiffs filed their complaint on November 28, 2007 in the United States District Court for the Western District of Pennsylvania. On January 15, 2008, the matter was transferred to this court. On October 15, 2008, pursuant to defendants' motions, the court dismissed plaintiff U & Me, Inc., all but six defendants, and all but three claims. *See Guarrasi*, 2008 WL 4601903, at *11. On May 27, 2009, plaintiff voluntarily dismissed defendant Richard Fink. On the same day, the court dismissed defendant John Doe, Bucks County custodian of plaintiff's personal property, due to plaintiffs' failure to name the defendant within sixty days of the court's scheduling order, as the order so provided.

Thus, the remaining defendants include: Gambardella, Samios, Fryling, and Carroll. The remaining claims include: a § 1983[4] claim against Thomas G. Gambardella for deprivation of property arising out of an alleged coerced transfer of Guarrasi's real property; and a § 1983 claim against Michael Samios, Lisa Fryling, and Timothy Carroll for deprivation of property arising out of Fryling's alleged taking of Guarrasi's personal property. On February 19, 2009, defendants Gambardella and Carroll jointly filed a motion to dismiss the claims against them, or in the alternative a motion for summary judgment as to these claims. Plaintiff Guarrasi responded, but defendants did not file a reply.

## II. Standards of Review

### A. Conversion of Motion to Dismiss to Motion for Summary Judgment

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), or, alternatively, a motion for summary judgment pursuant to Rule 56. Under Rule 12(d), a court

---

[4] 42 U.S.C. § 1983.

must treat a motion to dismiss "as one for summary judgment under Rule 56," if the motion presents "matters outside the pleadings," which the court accepts, and the court provides "[a]ll parties . . . reasonable opportunity to present all the material that is pertinent to the motion." Consequently, the court must determine "first, whether the materials submitted require conversion; [and] second, whether the parties had adequate notice of [the] intention to convert . . . ." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Here, because both parties rely on declarations and other documents from discovery that are not "integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), the court cannot consider the motion as one for dismissal and must convert the motion to one for summary judgment. *See Fagin v. Gilmartin*, 432 F.3d 276, 280 (3d Cir. 2005) ("Federal Rule of Civil Procedure 12(b) requires conversion from a motion to dismiss to a motion for summary judgment when materials outside the pleadings are considered."); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1426 (holding that on motion to dismiss, court can consider materials integral to complaint without converting motion to one for summary judgment).

Even where submitted materials require it, a court cannot convert a motion to dismiss to one for summary judgment unless it "provides notice of its intention to convert the motion." *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989). Of the many circumstances the Third Circuit has identified as constituting, or contributing to, adequate notice of a court's conversion a motion from one to dismiss to one for summary judgment, almost all are present here. As the title of their motion states, defendants "framed [the motion to dismiss] in the alternative as [a] motion[] for summary judgment," *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996); *see Carver v.*

*Plyer*, 115 F. App'x 532, 536 (3d Cir. 2004) (finding title of defendant's motion sufficient to put plaintiffs on notice of conversion). Defendants filed this motion almost six months ago, during which time Guarrasi had ample opportunity to present materials to the court in opposition to the motion, which Guarrasi in fact did. *Id.* at 579. Guarrasi, a former lawyer, responded by citing Rule 56 and arguing that the evidence he presented shows that there exist genuine issues of material fact in this case, an explicit reliance on the standard for summary judgment. *See Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (nonmoving party's reference to summary judgment standard and use of appropriate factual evidence sufficed to show notice of court's intent to convert motion to dismiss); *Razzoli v. Dir., Bureau of Prisons*, 293 F. App'x 852, 855 (3d Cir. 2008) (same); *Carver*, 115 F. App'x at 536 (same). All of the above constitute sufficient indicia that Guarrasi had notice of the court's potential conversion of the motion to dismiss to one for summary judgment and responded accordingly. Therefore, the court can and will treat defendants' motion as one for summary judgment.

      **B.**    **Summary Judgment Standard**

The court will grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), but instead must present "specific facts showing

that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986) (quoting Fed. R. Civ. P. 56(e)). "If the [nonmoving] party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (citation omitted). For elements on which the nonmoving party bears the burden of production, the party must show more than "[t]he mere existence of a scintilla of evidence," but instead must present concrete evidence supporting each essential element of its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322-23. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

When a court evaluates a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed." *Anderson*, 477 U.S. at 255. Furthermore, "[a]ll justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy*, 90 F.3d at 744 (citation omitted). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citation omitted).

**III.** **Discussion**

Defendants argue that Gambardella and Carroll are entitled to judgment as a matter of law on the respective claims against them because there is no genuine issue of material fact that either had any involvement in the alleged deprivation of Guarrasi's property. Guarrasi contends that the evidence he presents creates a genuine issue of material fact that Gambardella participated in depriving him of his property at 703 North High Street and Carroll did the same for his personal property at 424 Oakdale Avenue.

Guarrasi's claims against defendants arise under 42 U.S.C. § 1983, which "provides for civil liability for any person who, under color of state law, subjects another 'to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Aardvark Childcare and Learning Ctr., Inc. v. Twp. of Concord*, 401 F. Supp. 2d 427, 444 (E.D. Pa. 2005) (quoting and citing 42 U.S.C. § 1983). "To [sustain] a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.")).

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). The second

step in the analysis is to determine that the actor acted under the color of state law. *See Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (holding that "[t]he deprivation must be caused by the exercise of some right or privilege created by the [s]tate . . . or by a person for whom the state is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor" (internal quotation marks and citations omitted)). Because neither Gambardella nor Carroll disputes that each acted under color of state law when engaging in any of the conduct at issue in Guarrasi's claims, the court turns to the rights underlying the deprivations at issue, specifically the due process protections of the Fourteenth Amendment, and what constitutes a violation of these rights.

"The Fourteenth Amendment to the United States Constitution prohibits deprivations 'of life, liberty, or property, without due process of law.'" *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (quoting U.S. Const. amend. XIV, § 1). As interpreted by the Supreme Court, this clause provides for both substantive and procedural due process. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992). For either type of due process claim, the "first step in [the analysis] . . . is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'" *Elmore*, 399 F.3d at 282 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations and quotations omitted)).

"[O]wnership is a property interest worthy of *substantive* due process protection." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995) (emphasis added), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 401 (3d Cir. 2003)). Additionally, "[i]t is . . . well established that

possessory interests in property invoke *procedural* due process protections." *Abbott*, 164 F.3d at 146 (emphasis added). Guarrasi's claims arise out of his asserted interest in his ownership and use and enjoyment of both his real property at 703 North High Street and his personal property that Fryling allegedly removed from 424 Oakdale Avenue. Because Guarrasi's claims involve violations of his interests in his property, both procedural and substantive due process apply.

"To establish a substantive due process claim, a plaintiff must prove . . . the government's deprivation of [the] protected interest [at issue] shocks the conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (noting "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"). The Third Circuit has "repeatedly acknowledged that . . . the meaning of this [shock the conscience] standard varies depending on the factual context." *United Artists.*, 316 F.3d at 399-400. Even so, the standard "encompasses 'only the most egregious official conduct.'" *Id.* at 400 (quoting *Lewis*, 523 U.S. at 846). Accordingly, the standard does not prohibit government actions made with an improper motive. *United Artists*, 316 F.3d at 400-02 (rejecting improper motive standard); *Morris v. Dixon*, No. Civ. A. 03 CV 6819, 2005 WL 950615, at *5 n.11 (E.D. Pa. Apr. 20, 2005) (suggesting that *United Artists*'s rejection of improper motive standard not limited to land-use context).

For interests entitled to procedural due process protections, the court must determine "whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a

meaningful opportunity to be heard." *Abbott*, 164 F.3d at 146. "Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures." *Abbott*, 164 F.3d at 146. Beyond the above core requirements, "[t]here is no rote formula for sufficient protections under the Due Process Clause." *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007). Instead, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation and citation omitted).

Based on the above, the court must determine whether there exists a genuine issue of material facts as to whether each defendant's conduct in the alleged deprivations of property violated the protections of substantive or procedural due process or both. Guarrasi claims that Gambardella directed Guarrasi's lawyer to deed the property at 703 North Street to Fryling. He also claims that defendant Carroll authorized a Hatboro police officer to grant Fryling permission to take Guarrasi's personal property from 424 Oakdale Avenue. In resolving this dispute, the court relies on the very limited facts submitted by the parties and the almost non-existent briefing.

    A.    **Claim against Gambardella**

Gambardella's sole argument is that he could not have possibly deprived Guarrasi of his property at 703 North High Street because Guarrasi, of his own free will, transferred the property back to Fryling under the settlement agreement dated November 5, 2004 and approved by the Bucks County Court of Common Pleas. Guarrasi argues that the transfer came at the express direction of Gambardella, the very prosecutor who was pursuing a criminal conviction against Guarrasi. In support of their argument, defendants point to the Settlement Agreement between

Guarrasi and Fryling, for which Guarrasi had representation of counsel.  (Defs' Mot., Ex. A - Stipulation and Settlement Agreement.)  While defendants correctly conclude based on this document that Gambardella did not take possession of Guarrasi's property, defendants miss the mark in concluding then that there exists no material issue of fact that Gambardella did not otherwise carry out a deprivation of property.

      A state actor need not directly deprive a person of property to commit a constitutional violation, but can also do so by acting under color of law in assisting another to do so.  *Abbott*, 164 F.3d at 147.  In *Abbot v. Latshaw*, a van owner brought suit against a county constable and township police officers for their role in assisting the van owner's ex-wife in taking a van the plaintiff had paid for, but to which the ex-wife had title in her name.  *Id.* at 147.  The Third Circuit held that the constable committed a "taking or deprivation of a . . . property interest" because he "used his public authority to help [the ex-wife] take possession of the van" by accompanying the ex-wife to retrieve the van and by threatening to arrest the van owner should he resist the acquisition.  *Id.*  Moreover, a responding police officer "played a role in the seizure and resulting violation of [the van owner's] constitutional rights" by advising the ex-wife that she had a right to the van and threatening to arrest the van owner's attorney for protesting the acquisition of the van.  *Id.*

      To demonstrate Gambardella's role in the deprivation of Guarrasi's property, Guarrasi presents several emails tending to show that Gambardella directed the transfer of 703 North High Street.  Over the course of several months, Gambardella instructed Guarrasi's lawyer to "just deed the house back," while at the same time alluding to the possibility of arresting Guarrasi for the alleged scheme by which Guarrasi acquired the home.  Like the constable and police officer

in *Abbott*, Gambardella, on his own, allegedly determined that Fryling had a right to ownership of the property at issue, allegedly advised Fryling of this determination, and allegedly threatened to arrest Guarrasi if he did not provide with Fryling with the property. Accepting the authenticity and accuracy of the emails Guarrasi presents, along with all justifiable inferences therefrom, as the court must for the purposes of this motion, these emails give rise to a genuine issue of material fact that Gambardella had some actionable involvement in directing the transfer of Guarrasi's property at 703 North High Street. Because there remains an issue as to Gambardella's involvement, he is not entitled to judgment as a matter of law on the basis that he in no way violated Guarrasi's due process rights.[5] Accordingly, the court will deny the motion for summary judgment as to Gambardella.

  **B. Claim against Carroll**

Carroll argues that he did not participate in the deprivation of Guarrasi's personal property located at 424 Oakdale Avenue because he did not aid or give permission to Fryling to seize the property. Guarrasi contends that because Carroll set in motion a chain of events that led to the taking of his personal property, he caused the deprivation of Guarrasi's property in violation of his due process rights. Under § 1983, liability attaches to any person who "'causes' any citizen to be subjected to a constitutional deprivation . . . [not only by] direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."

---

  [5] Gambardella does not argue: (1) that his alleged conduct does not constitute "conscience shocking" behavior in violation of Guarrasi's substantive due process rights, *Chainey*, 523 F.3d at 219; or (2) that his alleged conduct did not deprive Guarrasi of notice of the deprivation of property and an opportunity for Guarrasi to contest it in violation of Guarrasi's procedural due process rights, *Abbott*, 164 F.3d at 146.

*Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (emphasizing use of word "cause" in text of § 1983)).[6]

Here, Fryling contacted the police department of Hatboro Borough, located in Montgomery County, seeking assistance in recovering personal property, which she believed belonged to her and believed was located at 424 Oakdale Avenue. Upon contact from the responding Hatboro officer, Carroll apprised him of the ongoing investigation of Guarrasi in Bucks County, but said nothing further. As Carroll declares, and the Hatboro police report supports, he did not authorize the removal of Guarrasi's property. As a Bucks County detective, Carroll lacked any authority in the matter because the property at 424 Oakdale Avenue lies in Hatboro Borough, Montgomery County, and thus outside of Carroll's jurisdiction, as he explained in his declaration. In response, Guarrasi presents absolutely no evidence that Carroll either purported to have or exercised any authority over the matter. Instead, Guarrasi merely

---

[6] "The Third Circuit has not directly addressed the issue of proximate causation in § 1983 cases outside of the context of supervisory liability." *Rudolph v. Clifton Heights Police Dep't*, Civ. Action No. 07-cv-01570, 2008 WL 2669290, at *4 (E.D. Pa. July 7, 2008); *see also Williams v. Pa. State Police Bureau of Liquor Control Enforcement*, 144 F. Supp. 2d 382, 384 (E.D. Pa. 2001) (explaining that Third Circuit precedent excludes liability under § 1983 based on respondeat superior, but not based on proximate causation). In *Williams*, this court found the Ninth Circuit's analysis on this issue "persuasive and most consistent with the language of § 1983." 144 F. Supp. 2d at 384. Other courts in this circuit have adopted this "setting in motion" interpretation of "cause" under § 1983. *See Rudolph*, 2008 WL 2669290, at *4 (adopting proximate causation analysis of *Williams*); *McCleester v. Mackel*, Civ. Action 06-120J, 2008 WL 821531, at *12 (W.D. Pa. Mar. 27, 2008) (using term "setting in motion"); *Pilchesky v. Miller*, Civ. Action No. 3:CV-05-2074, 2006 WL 2884445, at *5 (M.D. Pa. Oct. 8, 2006) (citing *Williams*). Many other circuits have followed this approach. *See, e.g.*, *Morris v. Dearborne*, 181 F.3d 657, 672-73 (5th Cir. 1999); *Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998), *cert. denied*, 532 U.S. 1020 (2001); *Snell v. Turner*, 920 F.2d 673, 700 (10th Cir. 1990), *cert. denied*, 499 U.S. 976 (1991); *Darnell v. Ford*, 903 F.2d 556, 561 (8th Cir. 1990); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560-61 (1st Cir. 1989); *Conner v. Reinhard,* 847 F.2d 384, 396-97 (7th Cir.), *cert. denied*, 488 U.S. 856 (1988).

contends that Carroll had "extra-judicial" police powers that extended throughout Montgomery County, including Harboro Borough, but provides no specific factual or legal support for this contention. Even assuming that Carroll had the authority Guarrasi claims he did, Guarrasi provides no evidence that Carroll did in fact exercise this authority. Beyond these unsupported contentions, Guarrasi provides no other evidence to rebut defendants' evidence of Carroll's limited role or to show any other involvement by Carroll in the incident.

Because Guarrasi relies merely on his bare assertion of Carroll's "extra-judicial" police powers to counter Carroll's declaration, Guarrasi has not raised a genuine issue of material fact that Carroll played anything more than an insignificant, tangential role in the deprivation of Guarrasi's personal property. With such a limited, virtually non-existent, role in the alleged deprivation at issue, Carroll neither had any direct involvement in it nor could he be said to have set in motion a series of acts by others that he knew or should have known would cause others to inflict a constitutional deprivation. *Duffy*, 588 F.2d at 743-44. Consequently, Carroll's conduct did not violate Guarrasi's due process rights and thus did not run afoul of § 1983. Therefore, Carroll is entitled to judgment as a matter of law on this issue, and the court will grant the motion for summary judgment as to the claim against Carroll.

## IV.     Conclusion

Because defendants style their motion as one to dismiss, or in the alternative, for summary judgment and rely on materials outside the pleadings, the court can properly consider the motion as one only for summary judgment. Because of the specific factual evidence presented by Guarrasi, there remains an issue of material fact as to whether Gambardella had a constitutionally improper role in Fryling's obtaining of Guarrasi's property at 703 North High

Street.  Thus, on that basis Gambardella is not entitled to judgment as a matter of law.  Because there exists no genuine issue of material fact as to Carroll's role in Fryling's acquisition of Guarrasi's alleged personal property from 424 Oakdale Avenue, Carroll is entitled to judgment as a matter of law.  For the above reasons, the court will deny the motion for summary judgment as to defendant Gambardella and grant the motion for summary judgment as to defendant Carroll.